Judge Rorertson
delivered the opinion of the Court.
On the 6th of November, 1821, Golden filed his bill in chancery, against Maupin, enjoining a judgment, which Maupin had obtained against him, for the last payment of the price of 143 acres of land, sold and conveyed by Maupin to him.
The bill charges, that the title was not in Maupin, but in one Richard Mitchell. That Maupin had removed to, and was then living in Missouri; and that a small part of the land (about seven acres) which Maupin sold, was not embraced by his claim.
On the 27th of February, 1822, Maupin filed his answer, admitting his removal, but denying any de- *237 firit in the tract, sold to Golden; asserting that bis title was good, and shewing its derivation. Barton was the patentee. R. Mitchell purchased from Burton, and Maupin who bought from Mitchell, had obtained a title by decree of court, before which decree, but pending the suit for it, (as alleged in the answer) Golden, aware of all these facts, made the purchase, and accepted the deed, after the decree was rendered, and the title perfected to Maupin.
On the 13th of June, 1822, Golden filed an amended bill, charging, that the title to the land was in Robert Burton,-- Farrow, or Samuel Mitchell. '
On the 16th of June 1824, another amended bill was filed, charging that the decree, by which Maupin claimed title to the land, had been opened, and that the suit was then pending.
On the 26th of February 1827, another amendment was filed, stating that the widow of R. Burton, brought a suit for her dower in the land, and rents for- its occupancy; and averring, that Golden was apprehensive that she would succeed, and would subject him to the payment of a large amount for rents.
The amended bills were never answered, or otherwise noticed by Maupin.
It appears from the record of the suit vs. Burton and others, for a title, that a commissioner had conveyed the title to Maupin, for Burton, Mitchell,’&c. in pursuance of a decree of the Madison circuit court, before the date of Maupin’s deed to Golden; and that one of the defendants, ( being a non-resident) afterwards answered, and thereby opened the decree. But it also appears, that this court affirmed the decree of the circuit court, at the April term, 1826. Burton had long before, made a deed, but it was apprehended that it was not effectual.
The only evidence of any deficit in the tract of land, is the report of the county surveyor, stating that by running a straight line, for the patent call, from corner to corner, a narrow strip of the land conveyed to Golden, containing about seveu acres, would he left out. But whetherGolden has his full quantity *238 of 143 acres, and of as good quality, and as great value, as if the tract contained the seven acres; or the patent line, as marked, was rectileneal or somewhat devious, so as to include the seven acres, does not appear.
Party having iome ground tioiTitshould not be disolv-®d at his costs,
It remains doubtful whether there is a deficit, or whether, if there be, Golden would be prejudiced by it. The deed is not exhibited, to shew whether the sale was in gross, or by the acre, or to what extent it would hold Maupin responsible.
On the filing of a bond, to indemnify Golden against any loss, which might accrue from any of the causes, mentioned in his bills, acknowledged by John Duncan, as Maupin’s security, whom the court approved, as amply sufficient, the injunction was dissolved without damages, and the costs of this suit were decreed against Golden.
The decree for costs cannot be approved. For, although Golden seemed to be hunting for pretexts for withholding the amount of the judgment, and was very much perplexed in his efforts to discover defects in M-tupin’s title, yet, it appears, that his researches discovered that the title was not perfectly secure until the decree for it, had been affirmed by this court. As, therefore, Golden bad some ground for his injunction, although he did not know it, when he filed his original bill, it was not right to compel him to pay costs. But the title was not perfected, in consequence of his injunction, nor at his instance. Nor does Maupin seem to have been guilty of any fraud. He is not charged with fraud, or misrepresentation or suppression of the circumstances of his title. Golden had received a deed, after the commissioner, (under the decree of the Madison circuit court, in which county Golden lived) had made a conveyance to Maupin. We would not feel disposed to doubt, from the whole aspect of the case, that Golden had actual notice of the state of the title, before his purchase, or the conveyance to him. But whether he had or not, he had constructive notice. He knew that the title was conveyed to Maupin by a decree of court; and he is presumed, therefore, to have been *239 acquainted with the facts disclosed by the record of the suit in which the decree was rendered.
gainst non resident ven-fo^ffectin tit]e or quan_ tity, altho5 vendpe *la8 e
Seven acres defect m 143,-rescind
Itis true that there is no positive proof of Golden’s acceptance of the deed. He states in his bill that the dfeed had been acknowledged by Maupin, and lodged' in the proper office to be recorded. He does not say, that he was unwilling to receive, or that he did not accept it. He was in possession of the land; Mau-pin was about to remove to Missouri; there was then no complaint of any defect of title, and consequently, the inference is rational and legal, that there was no suspicion of any defect of quantity or right. Under all these circumstances, the mind must be morbidly sceptical, which could doubt, whether the deed was accepted or not. That it was accepted, isas much a presumption of law, as it is of fact.
Por these reasons, Golden would have had no right to appeal to the chancellor, if Maupin had not removed from the state;because, having accepted a deed, with at least, a presumed knowledge of its effect and character, the ear of the chancellor would be deaf to his petitions for lelief, for either lack of title or quantity, if by removal, Maupin had not rendered the legal remedy incomplete, and perhaps ineffectual. This principle is settled by a series of adjudications by this court.
Our conclusion from these facts, is, that neither Golden nor Maupin, oiight to have been subjected to the payment of the costs of this suit. But that each should have been decreed to pay his own costs. If it was right to dismiss the bill, Maupin ought not, for the reasons which have been intimated, to pay the costs. If Golden had a right to go into chancery, and we think he had, he ought not to pay the costs. If, by his suit, he had perfected the title, he would have been entitled to his costs.
It remains, therefore, only to consider whether the court did right, in dismissing the bill, and dissolving the injunction without damages.
The court ought not to have rescinded the because:
1st. The parties could not well be reinstated.
Widow not entitled to rents of interest, on dower ; nor to damages, unless husband died seised.
2d. The deficit in the quantity, is not sufficiently shewn, and is too inconsiderable and unimportant to justify a recision, if it were clearly proved that a deficit exists.
3d. The deficit of title, is not shewn now to exist* or if it be, is not of sufficient magnitude for a recision.
The only objection to the title, which remained at the date of the decree, without an answer perfectly satisfactory, is the alleged right of Mrs. Burton to dower; and this is susceptible of several answers.
1st. As to the rents or interest claimed by the widow, the principle or dictum, is yet to be found, which will allow her either, even if she be entitled to dower. By the ancient common Jaw, a widow could not recover rents for her dower, which had been withheld, nor interest on the value of her rights.
The statute of Merton, H. III. and a statute of this state, of 1796, I. Dig. 444, allowed damages for the deforcement of dower to lands, of which the husband died seised. But for land conveyed by the bus-band in his lifetime, there is no law, authorizing the widow to recover damages on her dower. See Kendall vs. Henly, V. Monroe, 283; and the authorities there cited.
2d. There is no evidence in this case, that Mrs. Burton is entitled to dower on this land. It is not shewn that she was Burton’s wife, when he parted with his title. The amended bill, which presents the question of dower, only states that a suit had s been brought for dower, and was pending. It does not allege that Mrs. Burton has right of dower. The bill being taken forconfessed, therefore, does not shew that there is any solidity in this objection to the title. If Golden had been anxious only for an indisputable title to the land, he would have ascertained, and alleged, and proved more than he has done, in relation to Mrs. Burton’s dower. It was his duty to do so. The pendency of a bill for dower, proves nothing. It might have been an artifice intended only to give semblance of equity to Golden.
*241 besides, the title has been procured from Burton, by a decree of a court of competent jurisdiction; and that decree has been affirmed by this court. would, therefore, be somewhat difficult to maintain a right of dower in Mrs. Burton.
If it would have been unjust to rescind the contract, it would have been equally so, to perpetuate the injunction. Golden should not hold the consideration, and the land too. The land he may hold against the world, for aught that this court can know; and if the injunction had been perpetuated, when would it be ascertained that the title is good? If it should hereafter prove defective, what would be the consequence of sucha result, to the decree of perpetuation? If it should, (were such thing possible) hereafter be ascertained to be as unexceptionable as “Ccesar’s wifej'1 could the decree be overruled or revoked? It would have been absurd to perpetuate the injunction, without rescinding the contract. Nor would it have been proper to decree damages for defect of title. No data are furnished, for ascertaining whether there will be any damages, or what would be its amount. Moreover, the same objections to a decree, perpetuating the injunction, would apply with equal force to one fordamages for want of title.
What then ought to have been the decree of the court? The answer is, that it ought to have been what it was, except as to costs; unless the court had directed an inquiry* to ascertain the alleged deficiency in the quantity, and the damages, resulting from it, to Golden, and in the event of finding, that there was a deficit, and that Golden had a right to credit for it, had decreed such credit.
The objection to the bond, accepted by the courts 'does not come with grace from Golden. The bond surely Can do him no harm; and if his only objects be justice, and security, such a bond is as much as he could desire or ask. The bond is somewhat anomalous. But if it were necessary to decide upon it, we are not prepared to say that the court would have erred to the prejudice of Golden, by requiring him to accept it. If Golden be entitled to any relief, for a possible defect of title, such security as that offered *242 by the bond, is all that he could exact, for the reasons already given. If he refuse to accept this, he would thereby evince a disposition, any other than such as would recommend him to the favor of the chancellor. He would prove that his object is delay, and not justice; and it might be possible, if he would refuse to accept such an offer, that for that reason, his bill might be dismissed. This is not, however, intended to be decided. Whether Maupin could be compelled to give the security, is another question, as distinct from this, as whether Golden could be forced to take any collateral security; neither of which will now be decided, because it is not material to decide either. Maupin was not forced to give the bond. Golden was not coerced to accept it. He has not accepted, though he may find that it would have been better to do so. The party and the court offered him the bond; and thereupon, his bill was dismissed The. decree of the dismission could not be reversed, if the bond had not been given. “A fortiori,” it cannot be reversed, merely because it was offered.
As we do not find it necessary to decide on the effect of such a bond, wé are content to leave this part of the case, with the general suggestions, which have been made upon it. It would present a new and vexatious question. In ordinary cases, we would not tolerate a coercive procedure of this sort; but we cannot say, that there may not be cases, in which it would be an appropriate, and the only security. If there can be cases of this kind, this case would be one of them, if Golden has a right to any relief, for a questionable title to his land. In the case of Morrison’s administrators, &c. vs. Beckwith, IV. Monroe, this court ordered, that if Coshy should “pay or secure a certain sum of money to Beckwith, his injunction should be dissolved;” and “if the obstruction is not thus removed, and Cosby shall retain, at this time, a portion of the estate, amply sufficient to discharge the balance due, and he will not otherwise indemnify the complainants, he must he compelled to execute to the complainants, a mortgage on the estate so retained by him,” &c.; and in that event, it was ordered, that “the injunction be dissolved.” This was an injunction to *243 restrain the collection of a part of the consideration for land, on account of a defect in the title.
Turner, for plaintiff; Caperton, for defendant.
Although that case, and this, are not precisely alike, there is a strong analogy between them. That ia referred to, however, simply to shew thatthere may be cases, in which security, personal or real, to indemnify a complaining party, against a defective title, may be' required; and in which, on the giving of such indemnity, the complainant will be dismissed, and the injunction, if there be one, dissolved.
If there be a deficit in the tract of land, and Golden be entitled to compensation for it, the circuit court might have proceeded to ascertain the facts,, and thereupon, have perpetuated the injuction, for the value of the deficit’. It was not, however, the duty of the court to do this, as Golden failed to.present a claim of this sort, in a proper manner. If he purchased by the acre; if there are not 143 acres,in-the boundary of Maupin; and if the contract be such-as will hold Maupin responsible for the deficiency, as he is a non resident, the chancellor might have settled this matter, in this case. But the allegations and proof are insufficient to entitle Golden to a decree for damages.
Golden has not shewn certainly, that there is any deficiency in the quantity, in the boundary, which he purchased. He has not shewn, that his contract entitled him to more land, than the title of Maupin covers; nor what that title does cover. Maupin insists, that his title includes all the land which he sold to Golden. The report of the surveyor does not prove that Maupin’s lines do not include 143 acres; nor that they exclude any.land sold by him to Golden.
Wherefore, as the case stands, there can be no decree to Golden for compensation, for the alleged deficit in the tract.
But, forthe error in decreeing costs against Golden, the decree is reversed, and the cause remanded, fora decree dismissing the bill without costs or damages.
Golden must recover costs in this court.